**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUBMIA**

BIOCONVERGENCE LLC d/b/a          )
SINGOTA SOLUTIONS,                )
                                  )
    Plaintiff,          )
                                  )
  v.                              )  Civil Action No. 1:21-cv-02091
                                  )
HONEY JI'S, CORP.,                )
                                  )
    Defendant.          )
                                  )

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

  Plaintiff BioConvergence LLC d/b/a Singota Solutions ("Singota"), by counsel, respectfully submits this memorandum in support of its motion asking the Court to stay these proceedings pending further action in a related lawsuit, *BioConvergence LLC d/b/a Singota Solutions v. Honey JI's Corp.*, Case No. 1:21-cv-02174-JMS-MG (the "First Honey Ji's Action"), which is pending in the United States District Court for the Southern District of Indiana (the "Indiana Federal Court").  A stay of these proceedings will best protect Singota's rights while preserving party and judicial resources.

  On August 4, 2021, Singota filed the First Honey Ji's Action in the Indiana Federal Court against Defendant Honey Ji's Corp.  The same day, Singota also filed this substantially-identical lawsuit (the "Second Honey Ji's Action") for the purpose of preserving its claims against Honey Ji's in the event that the First Honey Ji's Lawsuit cannot proceed in Indiana.  Singota intends to pursue its claims against Honey Ji's in the First Honey Ji's Action; if that case proceeds in Indiana, this litigation will become unnecessary, and Singota will voluntarily dismiss the Second Honey Ji's Action.  However, in the event the First Honey Ji's Action does not proceed to a final resolution on the merits, Singota intends to pursue its claims in this Court and proceed with this Second

Honey Ji's Action.  Until the parties agree or the Indiana Federal Court finally determines that the First Honey Ji's Action may proceed in Indiana, Singota respectfully requests that this litigation be stayed.

## I.       **RELEVANT BACKGROUND**

On February 27, 2019, Singota filed a lawsuit alleging claims for breach of contract, trade secret misappropriation, and other related claims against its former employee Jaspreet Attariwala. That lawsuit is currently pending in the Indiana Federal Court as *BioConvergence LLC d/b/a Singota Solutions v. Jaspreet Attariwala*, Case No. 1:19-cv-1745-SEB-MG (S.D. Ind.) (the "Attariwala Litigation").  The Attariwala Litigation began in Indiana state court but was removed to federal court on April 30, 2019.  [Attariwala Lit, Dkt. #1.]  In her employment agreement with Singota, Attariwala agreed that "any disputes arising under this Agreement and/or any action brought to enforce this Agreement may be brought in a state court of competent jurisdiction in Monroe County, Indiana, or in the federal court for the Southern District of Indiana and the parties consent to personal jurisdiction of such courts and waive any defense of forum non conviens." [Dkt. #1 at ¶ 25, and *Exhibit A thereto* ¶ 14.]

In the Attariwala Litigation, Singota alleges—and both the state court and Indiana Federal Court have found in entering preliminary injunctions—that in the final days and weeks prior to Attariwala's departure from Singota to join a direct competitor (*i.e.*, Emergent BioSolutions ("Emergent")), Attariwala harvested massive amounts of Singota confidential information and trade secrets.  [Attariwala Lit, Dkt. #121][1]  Among many other things:

---

[1] The litigation between Singota and Attariwala has been described by the Indiana Federal Court as "prolix and labyrinthine" [Attariwala Lit, Dkt. #121 at p. 2], and the dispute has spawned related litigation in several courts.  In the interests of brevity, Singota recites only the factual background and procedural history necessary for this Court's resolution of the present motion; however, a more thorough recitation of the factual background and procedural history may be found in Singota's Complaint in this matter.  [Dkt. #1 at ¶¶ 12–402.]

- Both before and after accepting her offer of employment with Emergent, Attariwala forwarded numerous emails containing Singota confidential information from her Singota email account to her personal email account, including client and prospective client contact lists and business leads, research and development documents, computer aided design (CAD) drawings of Singota's operations, manufacturing and packaging technical plans, pricing information, and other trade-secret, confidential, and proprietary information;

- Just minutes after accepting Emergent's offer of employment, Attariwala downloaded six reports from Singota's client relationship management ("CRM") database, which contained extensive confidential records relating to hundreds of Singota's clients and prospects, including their status as a prospect or client; counts as to open and closed deals; entries of future dates for activities for certain entities; and contact information for more than 1,500 individuals.

- Two days before leaving Singota, Attariwala created .pst file copies of her entire "inbox" and "sent" folders from her Singota email account, which contained more than 10,000 emails and thousands of confidential attachments.

- Shortly before leaving Singota, Attariwala copied Singota's confidential information to a personal external hard drive, then to a personal laptop. Subsequent copies of this voluminous information—which are known to exist and which were created by Attariwala immediately upon receiving notice of Singota's lawsuit—continue to exist and have never been recovered.

[Dkt. #1 at ¶¶ 63–144; Attariwala Lit., Dkt. # 121 at p. 15–17 (summarizing findings from court-appointed forensic expert).]

Attariwala owns and operates a baking business, Honey Ji's. [Dkt. #1 at ¶ 53.] In the course of the Attariwala Litigation, Singota learned that Attariwala copied massive volumes of Singota Confidential Information to a laptop which Attariwala had allegedly purchased for Honey Ji's use (the "Honey Ji's Surface Laptop"); forensic investigation revealed that Attariwala accessed some of this information after her employment with Emergent began. [Dkt. #1 at ¶¶ 69, 125, 159.] On February 27, 2019, shortly after receiving notice of the Attariwala Litigation, Attariwala again copied voluminous Singota confidential information, this time from the Honey Ji's Surface Laptop to an unknown device or account. [Dkt. #1 at ¶ 167.]

As the Attariwala Litigation progressed, Singota and its court-appointed forensic investigator discovered through extensive computer forensic analysis the vast scope and severity of Attariwala's misappropriation as well as her non-compliance with various court orders. Attariwala's theft—and her subsequent efforts to obfuscate her bad acts—led the Indiana Federal Court to issue further injunctive relief against Attariwala that barred her from continuing her employment with Emergent. [*See* Attariwala Lit, Dkt. #85-4, #85-5, #85-6, #121] The December 20, 2019 Preliminary Injunction in the Attariwala Litigation expressly extended the terms of the injunction "to all those in active concert and participation with her," which would include Honey Ji's. [Attariwala Lit, Dkt. #122 at pp. 4–5 (emphasis added).]

On December 17, 2019, Attariwala filed a petition for bankruptcy in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), Case No. 19-00828-ELG. On June 25, 2020, the Bankruptcy Court issued an order granting Singota relief from the automatic stay and permitting Singota to prosecute the Attariwala Litigation.

On April 15, 2021, Singota moved for leave to add Honey Ji's as a party defendant in the Attariwala Litigation. [Attariwala Lit., Dkt. #267.] On June 9, 2021, the court in the Attariwala Litigation denied Singota's request for leave to amend on the grounds that the deadline included in the case management plan for amending pleadings had passed, and amendment to add new parties at this point could cause delay in that case, which has been pending for some time. [Attariwala Lit., Dkt. #282.]

On August 4, 2021, Singota filed the First Honey Ji's Action in the Indiana Federal Court. Anticipating the possibility that Honey Ji's might move to dismiss the First Honey Ji's Action on jurisdictional or other grounds, Singota filed the Second Honey Ji's Action in this Court on August 4, 2021, for the purpose of preserving its claims against a potential future statute of limitations

defense.  Singota prefers to litigate its claims against Honey Ji's in Indiana, which would obviate the need for this lawsuit.

On September 2, 2021, Attariwala filed a "Motion to Dismiss Complaint Against Honey Ji's Corp" in the Attariwala Litigation.  [Attariwala Lit., Dkt. #294.]  The motion to dismiss does not cite any legal rule or authority for dismissal, but asks the Indiana Federal Court in the Attariwala Litigation (not the First Honey Ji's Action) to "dismiss the complaints against Honey Ji in this Court and further asks the Court to transfer the D.C. case to Indiana so that it could be treated in the same way."  [*Id.* at ¶ 9.]

Singota now moves to stay this matter pending further action in the First Honey Ji's Action.

## II.  **ARGUMENT**

### A.  **Legal standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In considering whether to grant a discretionary stay, the "general considerations guiding the exercise of the Court's inherent authority to issue a stay" include "economy of time and effort" and "benefit and hardship" to the parties."  *Hulley Enters. v. Russian Fed'n*, 502 F. Supp. 3d 144, 154 (D.D.C. 2020) (citing *Landis*, 299 U.S. at 254, 259).  These considerations weigh in favor of a stay here.

### B.  **Staying this action will promote judicial economy and avoid hardship to Singota.**

Singota has filed its claims against Honey Ji's in this Court, as well as in the Indiana Federal Court, which is its preferred forum to litigate its case against Honey Ji's.  In the event the Indiana Federal Court entertains a motion to dismiss the First Honey Ji's Action on non-merits grounds (such as a jurisdictional challenge), it may be months before those issues are resolved.  If the First Honey Ji's Action were dismissed and the statute of limitations has expired, Singota's claims could

become time-barred.  Thus, to prevent that possibility (however remote), Singota has filed this action for the purpose of preserving its claims in the event of dismissal of the First Honey Ji's Action.

**1.  Singota appropriately filed the First Honey Ji's Action in the Indiana Federal Court.**

Singota, although believing that the Indiana Federal Court is the appropriate venue for litigating its claims against Honey Ji's, has thus filed this action as a "protective action" in the event that its claims against Honey Ji's should be dismissed without a decision on the merits and to avoid the running of the statute of limitations in those circumstances.  The United States Supreme Court has recognized that "[t]here is nothing necessarily inappropriate . . . about filing a protective action." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 294 n.9 (2005) (citing, among other cases, *Government of Virgin Islands v. Neadle*, 861 F.Supp. 1054, 1055 (M.D. Fla.1994) (staying an action brought by plaintiffs "to protect themselves" in the event that personal jurisdiction over the defendants failed in the United States District Court for the Virgin Islands)).

Singota properly filed the First Honey Ji's Action in Indiana Federal Court because that is the most appropriate venue for Singota's claims against Honey Ji's.  A closely related case, the Attariwala Litigation, is already pending in Indiana Federal Court.  The Indiana Federal Court is well acquainted with the extensive procedural and factual record that underlies and relates to the Attariwala Litigation and to Singota's related claims against Honey Ji's.  Indeed, both the Attariwala Litigation and the First Honey Ji's Action are assigned to the same magistrate judge, Magistrate Judge Garcia.  Notably, in the course of the Attariwala Litigation, the Indiana Federal Court entered a preliminary injunction against Ms. Attariwala that covered Honey Ji's as an entity potentially in "active concert or participation" with Attariwala.  [Dkt. #122 at pp. 4–5 (emphasis added).]

Singota believes that the Indiana Federal Court has personal jurisdiction over Honey Ji's because Honey Ji's purposefully directed its conduct toward Indiana.  In addition, Ms. Attariwala's employment agreement with Singota contains a forum selection clause placing venue and personal jurisdiction in Indiana.  [Dkt. #1 at ¶ 9, and *Exhibit A thereto* ¶ 14.] Ms. Attariwala's misconduct under her Singota Employment Agreement is intertwined with her conduct on behalf of Honey Ji's.

The record also shows that the Indiana Federal Court is the most appropriate forum in light the parties' and witnesses' convenience and in the interests of justice.  Significantly, the Indiana Federal Court is Singota's preferred forum, and "Plaintiff's choice of forum is normally to be preferred[.]"  *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 11 (D.D.C. 2013).

2. <u>**Singota appropriately filed the Second Honey Ji's Action as a protective action.**</u>

Although Singota has conducted reasonable research of the law and investigation of the facts to support its filing suit in Indiana Federal Court, Singota anticipates that Honey Ji's might challenge personal jurisdiction in Indiana or otherwise seek to dismiss the First Honey Ji's Action on grounds other than the merits.  Indeed, Attariwala has already moved to dismiss the First Honey Ji's Action, albeit in a procedurally-improper manner.  [Attariwala Lit., Dkt. #294.]  In the unlikely event that the Indiana Federal Court were to dismiss the First Honey Ji's Action (whether in response to the currently-pending motion or a subsequent motion to dismiss), there would be some risk that the statute of limitations on Singota's claims against Honey Ji's might not be treated as tolled while that action was pending.

Out of an abundance of caution, Singota filed the Second Honey Ji's Action to ensure the statute of limitations will not continue to run in those circumstances. In similar circumstances,

courts have recognized that the filing of a "protective action" like the Second Honey Ji's Action is reasonable, prudent, and not contrary to judicial economy.

In *Government of Virgin Islands v. Neadle*, 861 F. Supp. 1054 (M.D. Fla. 1994), for example, plaintiffs initially brought suit against the defendants in the District Court of the Virgin Islands ("DCVI"). Plaintiffs then filed a nearly-identical suit against the defendants the Middle District of Florida ("MDF"). The Florida court observed that "Plaintiffs brought this action to protect themselves in the event that Defendants prevail on appeal in the DCVI action on the ground that the DCVI lacks personal jurisdiction over them." *Id.* at 1055. The MDF court thus stayed the second-filed action pending the outcome of the DCVI action. *Id.* at 1056.

Similarly, in *Jones v. Continental Motors, Inc*., No. CIV.A. 12-0188-WS-C, 2012 WL 2733670 (S.D. Ala. July 6, 2012), the plaintiff initially sued the defendants in South Carolina. There, "[t]he defendant challenged personal jurisdiction but, after an extended period of jurisdictional discovery, the Court concluded that the exercise of personal jurisdiction was proper and denied the defendant's motion to dismiss." *Id.* Even then, however, the defendant "made explicit its intention to re-assert the issue on appeal should the plaintiff prevail at trial" and "[t]hus, though the defendant has lost rounds one and two, the jurisdictional bout [was] not yet over." *Id.* Concerned that the applicable statutes of limitations might have expired if the defendant ultimately prevail on the jurisdictional question, the plaintiff filed a "protective action" in the Southern District of Alabama. *Id.* ("The plaintiff, while professing confidence in the South Carolina Court's resolution of the jurisdictional issue, filed this protective action in what all agree is a proper venue."). The plaintiff then filed a "motion to stay all proceedings herein pending resolution of the South Carolina action, including appeals." *Id.* The defendant moved to dismiss the second-filed Alabama action. *Id.*

The *Jones* court granted the plaintiff's motion to stay and denied the defendant's motion to dismiss the second-filed "protective action."  The court rejected the defendant's argument that there is a presumption a second-filed action will be dismissed and that judicial economy would best be served by such dismissal rather than a stay.  The court explained:

> Assuming without deciding that such a preference [for dismissal of a second-filed action] exists, it vanishes if the jurisdiction of the first court remains unresolved. *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628–29 (9th Cir.1991) ("[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed," because "jurisdictional uncertainty ... at the very least ... counsels against outright dismissal."); *Burger v. American Maritime Officers Union*, 1999 WL 46962 at *2 (5th Cir.1999) ("When the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed."); *see also Central States, Southeast and Southwest Areas Pension Fund v. Paramount Liquor Co.*, 203 F.3d 442, 444 (7th Cir.2000) ("When comity among [federal] tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests.").

*Id.* at *1.  Noting that the defendant had expressed its intention to raise the issue of personal jurisdiction in the South Carolina action on appeal to the Fourth Circuit, the court reasoned it was appropriate to stay the plaintiff's "proactive action" in Alabama.  The *Jones* court explained:

> Dismissal of this action, then, presents a risk of the plaintiff being shut out completely—in South Carolina due to lack of personal jurisdiction, and here due to the statute of limitations. In such a situation, a stay is to be preferred to a dismissal. *See Alltrade*, 946 F.2d at 629 (where dismissal of the second action "would risk encountering statute of limitations problems ..., the second-filed suit should be stayed, rather than dismissed."); *Asset Allocation and Management Co. v. Western Employers Insurance Co.*, 892 F.2d 566, 571 (7th Cir. 1989) ( "Granted, the statute of limitations problems may not be serious.... But why take chances? It is simpler just to stay the second suit."); *O'Hare International Bank v. Lambert*, 459 F .2d 328, 331–32 (10th Cir. 1972) (even though, on first appeal in first-filed action, the appellate court had already ruled the plaintiff made out a "prima facie case" of personal jurisdiction, the trial court in the second-filed action abused its discretion by failing to stay the second-filed action until the personal jurisdiction issue in the first-filed action was "finally determined" after remand, including that "all appellate avenues had been availed or waived").

*Id.* at *2. The *Jones* court thus stayed the second-filed action, in part, relying "on the judicially recognized propriety of staying a protective action filed to satisfy the statute of limitations while a jurisdictional issue remains unresolved in another federal court." *Id.* at *3. *See also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 217 (3d Cir. 2016) (acknowledging "the commonsense proposition that, in a case raising timeliness concerns, a court's decision to dismiss a second-filed suit could, if the limitations clock were to expire in the first forum, have the effect of putting the plaintiffs entirely out of court"); *Askin v. Quaker Oats Co.*, No. 11 CV 111, 2012 WL 517491, at *5 (N.D. Ill. Feb. 15, 2012) ("Because dismissing a duplicative case is likely to lead to statute of limitations problems, it is usually 'simpler just to stay the second suit.'").

### 3.     <u>Staying this matter would not require the expenditure of significant judicial resources and would ensure that Singota's claims are protected.</u>

"The usual rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Utahamerican Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (citations and quotations omitted). Under this "first-filed rule," courts have discretion to stay the second-filed action, transfer it, or dismiss it. *See e.g.*, *Glodek v. Richardson*, Case No. GJH-19-2115, 2020 U.S. Dist. LEXIS 8597, at *7 (D. Md. Jan 16, 2020) ("Courts give effect to [the first-filed] rule by staying the second case, dismissing it, or transferring it to the first case's forum."); *Nutrition &Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003) ("Where the same parties have filed similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined."). Courts in this Circuit have stayed second-filed actions where a first-filed action involving the same parties and issues is pending. *See e.g.*, *Utahamerican*, 685 F.3d at

1123 (holding that "[t]he district court was right in staying its hand the first time" where the same

action was pending elsewhere); *Hulley Enters.*, 211 F. Supp. 3d at 280–288 (issuing stay where

first-filed action was pending in international forum).

  Here, a stay of this second-filed action would serve the interests of judicial economy and

the conservation of the Court's and the parties' resources.  As the Third Circuit has observed:

> The benefits of staying a second-filed suit are just as persuasive in the context of
> the first-filed rule. Because a stay confines litigants to the first forum until
> proceedings there have concluded, a stay will generally avoid wasted judicial
> efforts, conflicting judgments, and unnecessary friction between courts. In addition,
> a second-filed court will rarely need to reach the merits of the stayed case. The far
> more likely result is that the matter will reach a final resolution in the first court. In
> the few instances where there is no res judicata (or other) bar that would prevent
> litigation in the second forum, it will generally be because the second suit is not
> truly duplicative of the first.

*Chavez*, 836 F.3d at 220. *See also First Specialty Ins. Corp. v. Giftco, Inc.*, No. 10 C 1108, 2010

WL 4237937, at *5 (N.D. Ill. Oct. 21, 2010) ("[D]ismissal is not proper at this juncture because

the Rhode Island court has not yet ruled as to whether it has personal jurisdiction over FSIC.  Until

the Rhode Island court determines that threshold jurisdictional question, any further litigation in

connection with this action would be inefficient and a waste of judicial resources.  Accordingly,

the Court stays all litigation in this case until further order of the Court.").

  The same reasoning applies here.  If this matter is stayed, this Court will not be required to

expend judicial resources on it, nor will the parties be required to invest time and resources in

litigating it.  At the same time, staying this action would be in the interests of justice by avoiding

the risk of severe hardship to Singota in the event that the First Honey Ji's Action should be

dismissed on jurisdictional grounds after the statutes of limitations on Singota's claims have run.

**C.**  <u>**There is no potential prejudice to Honey Ji's if the stay is granted.**</u>

  Staying this matter will not prejudice Honey Ji's, as it will not be required to respond to or

litigate this matter while the First Honey Ji's Action is pending.  Thus, the stay will preserve

"economy of time and effort for [the Court], for counsel, and for litigants."  *Landis*, 299 U.S. at 254.  Indeed, Singota is filing this motion to stay at the very outset of this case to avoid this litigation placing any burden on Honey Ji's.

### III.    <u>CONCLUSION</u>

WHEREFORE, Singota respectfully moves this Court to stay this action pending further proceedings in the First Honey Ji's Action and to grant all other relief the Court deems appropriate.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.

*/s/Christopher C. Murray*
Christopher C. Murray, IN0007
Justin A. Allen, IN0011
111 Monument Circle, Suite 4600
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076
christopher.murray@ogletreedeakins.com
justin.allen@ogletreedeakins.com

*Attorneys for Plaintiff*
*BioConvergence LLC d/b/a Singota Solutions*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to any parties registered for receipt of electronic filings by operation of the Court's CM/ECF system.

In addition, a copy of the foregoing was served via United States First Class Mail upon the following:

> Honey Ji's Corp.
> c/o Jaspreet Attariwala
> 1390 Kenyon St., NW, Unit 323
> Washington, D.C. 20010

> */s/ Christopher C. Murray*

48412043.1